the declaration testimony of Novak and his witnesses cannot be extrapolated to all other New Jersey MASMs, class treatment is not warranted or manageable.

**B.      Novak Has Not Satisfied His Considerable Burden Under Rule 23.**

Novak must satisfy each of the four prerequisites of Rule 23(a), as well as one of the three requirements of Rule 23(b), before the elaborate and expensive class action machinery comes into play. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998). Novak has not met this burden "by merely repeating the requirements of Rule 23. 'Specific facts must be recited and alleged sufficient to meet the requirements of the rule.'" *West v. First Pa. Bank*, 1991 WL 17807, at *2 (E.D. Pa. Feb. 12, 1991) (quoting *Martin v. Easton Publ'g Co.*, 73 F.R.D. 678, 682 (E.D. Pa. 1977)). "'Because the determination of a certification request invariably involves some examination of factual and legal issues underlying the plaintiffs' cause of action, a court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) (quoting 5 *Moore's Fed. Practice* § 23.46[4]); *accord Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 500 (D.N.J. 2000) (Pisano, J.).

As demonstrated below, the "critical facts demonstrating commonality" and "common issues" identified by Novak are, in fact, immaterial to the adjudication of his misclassification claim. Moreover, the issues of law and fact which are

relevant to the adjudication of Novak's claim – *i.e.*, those which relate to the disputed elements of the executive exemption under the NJWHL – are overwhelmed by individual issues. As such, individual questions predominate over common issues, rendering Novak's claim inappropriate for class treatment.

### C. As Other Courts Have Already Recognized, Novak's Burden Under Rule 23(a) Cannot Be Satisfied.

Rule 23(a) requires Novak to demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable,[22] (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Novak's failure to sustain his burden of proof on any one of these requirements of Rule 23(a) precludes class certification. *See Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 543 (D.N.J. 2001).

Two California courts – at both the trial and appellate level – have already grappled with class certification issues very similar to those now facing this Court and have concluded that it is virtually impossible to adjudicate the misclassification claims of Home Depot MASMs on a class-wide basis.[23] As those

---

[22] Defendant does not challenge numerosity.

[23] *Home Depot Overtime Cases* (App. 47-48) involved claims by Home Depot MASMs that they were misclassified as exempt under California's executive exemption. California's executive exemption is similar to that of the NJWHL,

courts have already twice determined under plaintiff- and class-friendly statutory and case law in a similar action seeking unsuccessfully to certify a statewide class of MASMs based on misclassification claims, Novak cannot satisfy his burden under Rule 23. (*See* App. 47-48.) This motion should be denied.

### 1. This Court and others recognize that the exempt status of each MASM raises highly individualized issues that defeat commonality, typicality and predominance.

Commonality requires the presence of "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and typicality demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). Neither requirement is met here.

To begin, Novak identifies as "common questions" matters which simply have no bearing on this Court's Rule 23 analysis. For example, Novak claims that the question of "[w]hether Home Depot's conduct is willful and purposeful" presents a common issue. (Pl. Mem. at 21, 29.) However, willfulness is irrelevant

---

including a strict quantitative limitation regarding the performance of non-exempt work. *Compare* California's Industrial Welfare Commission Wage Order 7-2001 (Cal. Code Regs., Tit. 8, § 11070) (quoted in *HDOC-Appellate* at n.2) *with* N.J.A.C. § 12:56-7.1(a). *See also Marx*, 882 A.2d at 386 ("Like New Jersey, California has a test [for exemption] based on a quantitative assessment of time spent on tasks."). Ironically, this is the very case in which Home Depot's Director of Compensation provided the deposition testimony regarding the exempt classification of the MASM position upon which Novak now relies in support of his motion for class certification. (Pl. Mem. at 19-20.) That testimony did not sway the California courts in favor of class certification, and should likewise have no influence here.

here because the NJWHL does not extend the statute of limitations or impose exemplary damages if an employer's violation is found to be willful. *Compare* 29 U.S.C. § 255(a) *with* N.J.S.A. § 34:11-56a25.1. Also, Novak asserts that "[w]hether Home Depot was enriched from its alleged conduct and, if so, whether such benefit was unjust" presents a common question. (Pl. Mem. at 21, 28-29.) This cannot be so because Novak expressly <u>excludes</u> his unjust enrichment and quantum meruit claims from his class certification motion. (*See id.* at 1.) Novak's laundry list of "critical facts demonstrating commonality" (*id.* at 20) is nothing more than a collection of MASM trivia which has no bearing on the determination of the NJWHL executive exemption.[24]

---

[24] For example, it is immaterial to the adjudication of this case that "the MASM position exists in every Home Depot store." (Pl. Mem. at 20.) Additionally, items identified by Novak as "common" to the class are disputed by his own witnesses. For example, without record support, Novak identifies as "common facts" allegations that "Home Depot employs nationwide, standardized training materials for all MASMs" and that "Home Depot conducts centralized regional and national training sessions attended by all MASMs." (*Id.*) In his declaration, Novak testified that the Assistant Store Manager Training Guide ("ASM Training Guide") "contained a checklist of specific activities which I needed to accomplish during the training" (Novak Decl. ¶ 8), but, during his deposition, he testified about not reading the ASM Training Guide and that his District Manager "said it wasn't necessary." (Novak Dep. (App. 8) at 275-76, 397-98.) Similarly, in his declaration, plaintiff's witness Elmaghraby testified that the "Assistant Manager Training Guide" "was utilized throughout the country." (Elmaghraby Decl. ¶ 9.) Yet, during his deposition, Elmaghraby testified that the Assistant Manager Training Guide was "a book you're supposed to follow," but that "[i]t never happened." (Elmaghraby Dep. (App. 4) at 139.)

Further, Novak makes much of the existence of a single corporate job description for MASMs. Whether individual MASMs perform the expected duties, however, remains a fact-specific inquiry, as admitted by plaintiff and his witnesses. (*See* Parisen Dep. (App. 9) at 316 (MASM job description accurately and completely describes the job); Elmaghraby Dep. (App. 4) at 454-70 (disputing whether nearly every category of responsibilities in the MASM job description is something he has performed); Novak Dep. (App. 8) at 298-99, 304-05, 458 (claiming the job description is not "fully accurate," and noting "[t]here is [*sic*] no two people that perform the same exact duty," and the job duties that they perform on any given day also vary).)

Additionally, this Court and others have soundly rejected Novak's argument that Home Depot's "across-the-board determination that all MASMs nationwide were, and are, exempt," along with common job description and corporate expectations for the MASM position, present "common questions" applicable to all class members. (Pl. Mem. at 19.) In *Morisky*, 111 F. Supp. 2d at 500, this Court denied plaintiffs' motion for class certification of overtime claims by employees claiming to be misclassified under the NJWHL. Despite the plaintiffs' attempts to couch their claims as arising from a "common scheme," the Court held that what plaintiffs were "really challenging here is defendant's determination that they are exempt" employees. *Id.* at 498, 500. Judge Pisano concluded that "the question of

whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities," and it "requires a lengthy, individual, detailed, fact-intensive analysis of each potential claimant's job responsibilities and exemption status." *Id.* at 500; *see also Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100, at *3 (D.N.J. Dec. 19, 2007) (Cooper, J.) (denying conditional certification of misclassification claim and finding that "[e]mployees' status under the FLSA may vary, even if they have the same job title, if their job responsibilities and duties differ among each other"); *Bachrach v. Chase Inv. Servs. Corp.*, 2007 WL 3244186, at *3 (D.N.J. Nov. 1, 2007) (Martini, J.) (denying Rule 23 certification of NJWHL misclassification claims because determination of putative class members' exempt status "would require individual exploration of each member's specific work habits").

Courts in other jurisdictions have overwhelmingly ruled that overtime misclassification claims are not suitable for class certification. For example, in *Home Depot Overtime Cases*, the California appellate court explained, "[t]he disputed issue, whether the proposed class is exempt from overtime wage laws, involves individual questions of fact that predominate over common issues, rendering class action treatment inappropriate." *HDOC-Appellate* (App. 47) at 3; *see also Myers v. Hertz Corp.*, 2007 WL 2126264, at *4 (E.D.N.Y. July 24, 2007) (denying class certification because determining whether overtime exemption

applies "would require [a] fact-intensive inquiry into each potential [class member's] employment status") (internal quotations omitted); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006) ("an individual fact-specific analysis of each general manager's performance" would be necessary to determine which employees are exempt) (internal quotations omitted); *Diaz v. Elecs. Boutique of Am., Inc.*, 2005 WL 2654270, at *6 (W.D.N.Y. Oct. 17, 2005) ("[I]ndividual factual determination is necessary ... to determine if [a store manager] should be exempt or non-exempt...."); *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 54 (D. Conn. 2004) (a "fact-specific determination of each individual plaintiff's day-to-day tasks" would be required to determine whether class membership is appropriate); *Dunbar v. Albertson's, Inc.*, 47 Cal. Rptr. 3d 83, 89-90 (Cal. Ct. App. 2006) ("[T]he significant variation in the grocery managers' work from store to store and week to week ... [would require] very particularized individual liability determinations.").[25]

---

[25] Plaintiff relies upon several cases in support of his motion that are inapposite. For example, plaintiff cites *Ansoumana v. Gristede's Op. Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001), for a conclusion that the class members shared common factual and legal issues that fulfilled the prerequisites of Rule 23(a). (*See* Pl. Mem. at 22.) At issue in *Ansoumana*, however, was one central question – whether the plaintiffs, unskilled supermarket and drug store delivery workers, were the defendants' employees (and thus entitled to minimum wage and overtime compensation). 201 F.R.D. at 82. Because the inquiry central to the economic reality test for determining employment status rests in large part on the conduct of the defendant/employer toward the subject workers, the court found common liability for those claims would arise from the employer's conduct, rather than from the

## 2. The factors of the NJWHL's executive exemption are not subject to common proof.

As set forth in Section I, *supra*, New Jersey's "executive" exemption consists of a six-factor test for determining whether a particular employee is an exempt executive. N.J.A.C. § 12:56-7.1(a). As discussed below, Novak challenges whether: (1) management is a MASM's primary duty; (2) a MASM is involved in relevant personnel decisions, and (3) a MASM spends more than 40 percent of his/her time on non-exempt work.[26] Analysis of each of these factors

---

individual circumstances of each worker. *See id.* at 86; *Ansoumana v. Gristede's Op. Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003). Equally inapposite are the other cases cited by plaintiff (*see* Pl. Mem. at 22-23) for the proposition that courts have found the commonality requirement satisfied in misclassification cases. *See In re Farmers Ins. Exch. Claims Reps' Overtime Pay Litig.*, 2003 WL 23669376 (D. Or. May 19, 2003) (defendant did not challenge class certification; instead, parties stipulated to certification of state overtime claims as defined by plaintiffs); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) (plaintiffs did not challenge their status as exempt employees, but rather brought FLSA and state law claims challenging defendant's practice of impermissibly docking pay in partial day increments); *Mendez v. Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005) (non-exempt employees challenged defendant's policy of not paying overtime, not paying for travel time, and not calculating bonuses as part of compensation).

[26] Although Novak concedes that MASMs exercise discretion (Pl. Mem. at 4), he continues to argue that, because Home Depot has implemented "detailed rules and regulations, ... MASMs have no real discretion to exercise and thus, do not quali[f]y for any exemption." (*Id.* at 13.) Novak is wrong. An employer's implementation of even highly detailed company policies and standard operating procedures does not preclude the exercise of discretion by managerial employees. Specific procedures, guidelines, manuals, and checklists, and "[t]he obligation to complete forms and follow [company] procedures channels but does not eliminate the general manager's exercise of discretion." *Marx*, 882 A.2d at 381, 383 (finding that "[t]here is no evidence that would permit the conclusion that plaintiffs lack the degree of discretion required by [N.J.A.C. § 12:56-7.1(a)(4)]"). Because the

requires a detailed, fact-specific determination for each MASM.[27]  *See Marx*, 882

A.2d at 380-87.  This highly individualized inquiry precludes satisfaction of the

commonality and typicality requirements of Rule 23(a) and confirms that common

issues do not predominate.  *See Morisky*, 111 F. Supp. 2d at 500.

        a.     **The "primary duty" element of the executive exemption is not subject to common proof because it requires a fact-intensive analysis of each potential class member's actual, day-to-day job performance.**

In determining whether the "primary duty" element of the NJWHL's

executive exemption is satisfied, the Court must consider the actual work MASMs

perform and its "importance to their role in the organization."  *Marx*, 882 A.2d at

381.  As set forth fully in Section II.A, *supra*, determination of the actual work

MASMs perform is highly individualized.  Although Novak and his witnesses

protest that MASMs' primary duties were routine "tasking," their depositions show

---

existence of detailed company policies and standard operating procedures does not alone eliminate the exercise of discretion by MASMs, the exercise of discretion by a particular MASM must be assessed according to his/her individual circumstances.

[27] Elements that are not disputed, like the fact that MASMs are paid on a salaried basis, are not issues likely to arise at trial and are entitled to little weight in the Rule 23 analysis.  *See HDOC-Appellate* (App. 47) at 7.  Moreover, in rejecting reliance on undisputed elements of the executive test as common proof, the California appellate court explained:  "Although plaintiffs concede they could be considered exempt based on three factors, ultimately they want to prove they are *not* exempt," which requires individualized proof of the disputed elements.  *Id.* (emphasis in original).

that they consistently performed management duties as MASMs.[28] The particular

duties they performed and the time spent performing them varied by store, the

department(s) they managed, their experience, and any number of other highly

individualized factors. (*See* App. 39-46 (charts)); 29 C.F.R. § 541.102 (2003). To

the extent Novak submits evidence to the contrary, his evidence confirms the

individualized nature of the inquiry and the absence of common issues of fact or

law. As Novak himself admits, no two MASMs "perform the same exact duty,"

and the job duties they do perform vary on any given day. (*See* Novak Dep. (App.

8) at 458; *see also* Section II.A, *supra.*)

Moreover, despite Novak's assertions that non-exempt tasks occupied most

of his time as a MASM and were therefore his primary duties, the amount of time

spent performing managerial duties is not the sole consideration when determining

whether an employee has "management" as his or her "primary duty," thereby

further intensifying the amount of individual, fact-specific analysis required in this

case. *See Marx*, 882 A.2d at 381; 29 C.F.R. § 541.700. The primary duty test

requires consideration of "all the relevant facts" and a qualitative assessment of the

---

[28] *See Marx*, 882 A.2d at 381 ("Plaintiffs' managerial duties are their 'chief' duties
in the sense that the managerial duties have greater importance to their role in the
organization than does their performance for 'fill-in' tasks when the demand for
service is high or staff levels are low. They acknowledge that their obligation to
supervise, correct, and discipline the restaurant workers is continual and a critical
component of the job.") *and* 382 (performance of non-managerial tasks are not
necessarily inconsistent with simultaneous supervision).

following additional criteria: (1) "the employee's relative freedom from supervision;" (2) "the frequency of the employee's exercise of discretion;" (3) "the relative importance of managerial and non-managerial tasks," and (4) "the employee's salary relative to the wages of workers supervised." *Id.* Reviewing each of these factors for each potential class member would not be efficient or manageable.

With regard to the first factor, the record demonstrates wide individual variation in a MASM's relative freedom from supervision. (*See* pp. 8-9, *supra* (discussing differences in MASMs' experiences as highest-ranking manager or MOD.) That some of Novak's witnesses, but not all, were typically free from direct supervision confirms that individual analysis is required. (*See id.*); *see also Donovan v. Burger King Corp.*, 675 F.2d 516, 522 (2d Cir. 1982); *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 570 (8th Cir. 1995); *Marshall v. Sally Beauty Co.*, 1982 WL 2184, at *3 (E.D. La. Apr. 19, 1982).

As to the second factor, the evidence shows that MASMs exercise varying degrees of discretion with regard to their managerial tasks, which include disciplining employees, setting and adjusting work schedules, evaluating the performance of employees, recommending raises and promotions, and directing and apportioning work to employees. (*See* Charts at App. 39, 43-45 (confirming differences in MASM involvement in hiring, firing, scheduling, directing the work

of, evaluating the performance of, and counseling and disciplining employees).) A jury would be required to conduct a fact-based analysis of the level of discretion each individual MASM exercised – exactly the type of individualized inquiry that would require not only cross-examination of each MASM, but also the opportunity to present evidence from other managers and subordinates who worked with each MASM to contradict his or her testimony. (*See* Charts at App. 33-38 (showing contradictions between declarations and deposition testimony of plaintiff and his witnesses).)

The third factor, the determination of the relative importance of the managerial and non-managerial duties performed by MASMs, is also a fact-intensive question that would have to be evaluated store-by-store and MASM-by-MASM. For example, certain testimony of Novak and his witnesses shows that they performed activities mirroring those described in the Department of Labor's regulatory language, while others offer contradictory testimony. (*See* Charts at App. 39-45); *see also* 29 C.F.R. § 541.102 (listing examples of "management" activities). Moreover, to the extent MASMs perform non-managerial tasks, this work often overlaps with their managerial duties. As in *Marx*, Novak and his witnesses acknowledge that "their obligation to supervise, correct and discipline the ... workers is continual and a critical component of the job." 882 A.2d at 381. Novak testified that, no matter what task he was performing, he always wore his

management "hat," always had the same authority, was always monitoring the store for unsafe conditions, and was always monitoring his subordinate employees to make sure they were completing their tasks. (Novak Dep. (App. 8) at 196-97, 385, 514-15; *see also* Wagner Dep. (App. 13) at 146-47.)[29] As such, Novak's claim that MASMs' "primary duties" were routine "tasking" work cannot be evaluated using any "common proofs," as required for class treatment.

Finally, the fourth factor, which requires consideration of the relationship between a MASM's salary and other associates' hourly wages, also requires comparisons on a department-by-department and MASM-by-MASM basis. The current salaries of New Jersey MASMs range from approximately $      to $       annually. (*See* Cohen Decl. (App. 15) ¶ 8.) During the limitations period, some MASMs also earned bonuses, stock options and restricted stock. (*See id.*; Novak Dep. (App. 8) at 264.) Whether each MASM's salary compares favorably to the hourly wages paid to employees in his or her departments would require a fact-specific review of hours worked and payroll records on a MASM-by-MASM

---

[29] The particular circumstances under which certain tasks are performed may also inform the "relative importance" determination. For example, a MASM may perform non-exempt tasks in connection with his managerial role of "leading by example." Indeed, Novak agreed with the assessment in his performance review that he "strongly believes in leading by example," and that doing so meant Novak would perform certain tasks that associates were asked to perform. (Novak Dep. (App. 8) at 429-30.) Similarly, Novak's witness Aloi testified that at times he would perform some of the same tasks that hourly associates in his department were performing simply to "show[] them that I was willing to work alongside of them." (Aloi Dep. (App. 2) at 280-81.)

CONFIDENTIAL—
Portions To Be Filed Under Seal

basis. For all of these reasons, whether management is a MASM's "primary duty" can only be determined on an individual basis.

### b. MASMs' involvement in hiring and firing and other changes of status varies and further demonstrates that individual issues are predominant.

In addition to the contradictions between Novak's declaration and deposition testimony regarding his involvement in personnel decisions, the record also reflects wide variation in the involvement of Novak, his witnesses, and other New Jersey MASMs, in hiring and firing, and the weight given to MASMs' recommendations as to hiring, firing, promotions, and other changes of status. (*See* Section II.B, *supra*; App. 43, 45 (charts).) Because Novak's ability to recover on his NJWHL claim depends entirely on his own activities as a MASM, he cannot prove that there are common issues, or that any common issues predominate.

### c. Determining the percentage of time spent performing non-managerial job duties is fact-intensive and not susceptible to class-wide proof.

Whether a MASM devotes less than 40 percent of the workweek to the performance of non-exempt duties is likewise an individual issue of fact. Novak mischaracterizes the holding of *Marx*, 882 A.2d 374, when he argues that differences in the way individual employees perform their jobs are irrelevant to this inquiry. (*See* Pl. Mem. at 5.) To the contrary, *Marx* recognized the problems inherent in such an approach:

> Is the number of hours worked ... to be determined by the number of
> hours that the employer, according to its job description or its
> estimate, claims the employee should be working [on exempt work],
> or should it be determined by the actual average hours the employee
> spent on [such] activity? The logic inherent in the [regulation's]
> quantitative definition ... dictates that neither alternative would be
> wholly satisfactory. On the one hand, if hours worked on [exempt
> work] were determined through an employer's job description, then
> the employer could make an employee exempt from overtime laws
> solely by fashioning an idealized job description that had little basis in
> reality. On the other hand, an employee who is supposed to be
> engaged in [exempt] activities during most of his working hours and
> falls below the ... mark due to his own substandard performance [or
> affirmative choice] should not thereby be able to evade a valid
> exemption.

882 A.2d at 386 (quoting *Ramirez v. Yosemite Water Co.*, 978 P.2d 2, 13 (Cal.

1999)) (alterations in original). To avoid the "pitfalls" identified, the *Marx* court

eschewed a "moment by moment" accounting of manager's work time and adopted

the Supreme Court of California's approach in *Ramirez*, which held that "a trial

court should: 'inquir[e] into the realistic requirements of the job,' giving

consideration to '**how the employee actually spends his or her time**,' but also

'consider[ing] whether the employee's practice diverges from the employer's

realistic expectations....'" *Id.* (quoting *Ramirez*, 978 P.2d at 13) (emphasis added).

Moreover, the California courts have already considered and flatly rejected

an argument similar to Novak's that individual performance of MASM duties is

not relevant. *See HDOC-Appellate* (App. 47) at 3 ("We reject plaintiffs'

continuously reiterated position that, for purposes of class certification, the trial

court should consider only the realistic requirements of the job of MASM in deciding whether it qualifies for exempt status."). The California appellate court confirmed that the trial court must consider as "the most significant factor" the "actual work performed, and ... the time split between exempt and nonexempt work."[30] (*Id.* at 20.) In recognizing that a court must analyze "'first and foremost' the work actually performed," the California Court of Appeals, like the New Jersey appellate court in *Marx*, relied on *Ramirez*. *Id.* at 19-20 (quoting *Sav-On Drug Stores*, 34 Cal. 4th at 336-37 (citing *Ramirez*)).

This element of the executive exemption also requires a determination of whether each task was exempt or non-exempt, including the context in which it was performed. *See* N.J.A.C. § 12:56-7.1(a)5. For example, Novak asserts that MASMs performed "non-exempt 'tasking' duties and customer service duties for the overwhelming majority of their work week," and that "MASMs' duties were the same as hourly employees described as Department Supervisors and Sales Associates." (Pl. Mem. at 5, 8.) Such alleged tasking duties include "helping customers on the floor, stocking shelves, resetting shelves, disposing of trash ... and similar such tasks." (*Id.* at 8.) Novak contends the performance of such duties

---

[30] Because Novak's and his witnesses' characterizations of their job duties in their declarations are inconsistent with their deposition testimony, fairness and procedural considerations require that defendant be entitled to develop evidence of each MASM's "work actually performed" through cross-examination of each MASM and presentation of other witnesses. *HDOC-Appellate* (App. 47) at 3.

"shows that there is common proof that the MASM position is not exempt from the overtime requirements of New Jersey law." (*Id.* at 5.) Novak's argument is baseless and contradicted by his own evidence.[31]

As discussed in Section II.C., *supra*, dividing MASM duties into "exempt" and "non-exempt" categories will in many cases require evaluation of the context surrounding the performance of duties by individual MASMs. For example, MASMs may perform non-exempt duties in connection with their exempt work of training hourly associates.[32] In *Home Depot Overtime Cases*, the California Court

---

[31] To bolster his argument that MASMs are required to spend the "majority" of their time in the performance of non-exempt "tasking" duties, Novak focuses on Home Depot's "SPI" program. (Pl. Mem. at 8-10.) Without any record support, Novak argues that "[t]he MASM position was <u>created</u> in conjunction with Home Depot's 'SPI 2000' program." (*Id.* at 8 (emphasis added).) This is not accurate. Indeed, in response to a document request by Home Depot in the FLSA Action, named plaintiffs Novak and Elmaghraby produced a MASM List of Duties dated <u>1995</u>. (*See* Cohen Decl. (App. 15) Ex. B.) Novak further claims (without record citation) that "[t]he shift meant that non-exempt staffing levels during the busy daytime ... were drastically reduced. As a result, Home Depot MASMs had fewer hourly associates ...." (Pl. Mem. at 8.) Thus, Novak would have the Court believe that Home Depot's SPI program resulted in a transfer of some <u>associates</u> from the day shift to the newly created night shift, without a corresponding transfer of some <u>duties</u>. The record evidence again contradicts Novak's speculation. Home Depot's Regional Vice President Joe McFarland testified that

. (McFarland Dep. (App. 6) at 9-10.) Indeed, plaintiff's witness Scrivanich remembered SPI 2000 as "the guys who worked on overnight" and was unsure how SPI 2000 related to his merchandising duties as the Manager on Duty. (Scrivanich Dep. (App. 12) at 375.)

[32] *See* Aloi Dep. (App. 2) at 281-82; Scrivanich Dep. (App. 12) at 278; n.17, *supra*.

CONFIDENTIAL—
Portions To Be Filed Under Seal

of Appeals explained the inherent problems in making any determinations about

time spent on exempt and non-exempt duties on a class-wide basis:

> Home Depot has taken the deposition of approximately 16 of plaintiffs' declarants and in several instances; there has been significant impeachment. In addition to issues of basic honesty, depending on point of view, a MASM may in good faith describe a task differently. If a MASM is stocking shelves with a number of hourly associates, one MASM may see their role as supervisory, which is an exempt activity, while another MASM might describe it as simply stocking shelves, a non-exempt activity. At some point, a trier of fact will have to make individual decisions on these characterizations and credibility. Next, this court has considerable concern as to whether tasks can be simply and categorically classified as exempt versus non-exempt. At times, a MASM may be multi-tasking and engaged in both exempt and non-exempt activities. In the process of helping a customer, a MASM might be resolving a personnel issue, or might be interrupted and make a discretionary management decision. Or, if the MASM is helping a customer as part of training exercise, is the activity exempt or non-exempt? If a MASM conducts a focused inventory of a product suspected to be a high theft item for the purpose of making a loss-control policy decision, is the MASM engaged in an exempt activity? At a certain point, customer service, which might otherwise be seen as non-exempt, may reach the level of an exempt activity. For example, if the MASM is dealing with a large special order, or coordinating with a MASM in another store, or negotiating on behalf of a customer with a contractor, one might characterize the work as exempt.

*HDOC-Appellate* (App. 47) at 13-14 (quoting trial court); *see also Marx*, 882 A.2d

at 385 (recognizing the "distinction between a supervisor who does the same tasks

side-by-side with the workers, and a supervisor who does the work to demonstrate

or teach").

As the reasoning of this Court's and the *Home Depot Overtime Cases*
decisions make clear, and the testimony of Novak and his witnesses confirm,
adjudication of the elements of the executive exemption raises highly individual
issues of fact and law. Novak therefore cannot satisfy the commonality and
typicality requirements of Rule 23(a)(2)-(3).

Additionally, as a former MASM, Novak's interests may not be aligned with
the interests of current MASMs, as he has no ability to benefit from any
declaratory relief. (*See* n.33, *infra*.) He therefore cannot demonstrate that he is an
adequate representative of the proposed class, as required by Rule 23(a)(4).

### D. Novak Cannot Satisfy The Requirements Of Rule 23(b) Because Individual Issues And Monetary Damages Overwhelm His Claim.

#### 1. Novak's claimed monetary damages preclude certification under Rule 23(b)(2).

Rule 23(b)(2) is inapplicable here because the primary relief sought is
monetary damages, not injunctive or declaratory relief. Rule 23(b)(2) only applies
where "the party opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final injunctive relief
or corresponding declaratory relief with respect to the class as a whole." Fed. R.
Civ. P. 23(b)(2); *see also Barnes*, 161 F.3d at 142. Where monetary damages are
sought, "a court may only certify a class [under Rule 23(b)(2)] if the damages

claim is incidental to the primary claim for injunctive or declaratory relief." *Barabin v. Aramark Corp.*, 2003 WL 355417, at *1 (3d Cir. Jan. 24, 2003).

Although Novak's Complaint seeks unspecified injunctive relief and a declaration that defendant's actions violated the NJWHL, it is clear that these remedies are secondary to the primary relief sought – *i.e.*, overtime pay. (Complaint ¶¶ 2, 16, Prayer for Relief ¶ B.)  As one district court recognized in a similar case, "the declaratory judgment requested would, if granted in plaintiff's favor, serve as a basis for a monetary award and the injunctive relief, if any, would be essentially a corollary to the principal relief obtained." *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *6 (N.D. Ill. Dec. 1, 2000) (denying Rule 23(b)(2) certification of state wage and hour claims because primary relief sought was monetary); *see also Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 229-30 & n.5 (S.D.N.Y. 2003) (requested declaration that defendants violated FLSA and state wage and hour law was "incidental to plaintiffs' primary request for money damages and will be subsumed if such damages are awarded").  Thus, far from being "incidental," the monetary damages sought here are the primary form of relief.  Moreover, Rule 23(b)(2) certification is inappropriate because the damages sought are not in the nature of a group remedy, but are

dependent on individualized circumstances.[33]  Because any monetary damages

would be highly individualized and not susceptible to class-wide proof, they are

not "incidental" under Rule 23(b)(2).  *See Sepulveda*, 237 F.R.D. at 246.

### 2. Novak has not demonstrated that a class can be maintained under Rule 23(b)(3).

Novak's motion for class certification must also be denied because he cannot

show that: (1) "questions of law or fact common to the members of the class

predominate over any questions affecting only individual members," and (2) "a

class action is superior to other available methods for the fair and efficient

adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### a. Novak cannot demonstrate that common issues predominate.

The predominance inquiry tests "whether [the] proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The requirement that common issues

---

[33] Nor would plaintiff and numerous putative class members who no longer work
for Home Depot benefit from any injunctive or declaratory relief.  Thus, for
plaintiff and a substantial proportion of the proposed class, the only meaningful
relief is monetary.  *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
2007 WL 3045994, at *13 (N.D. Cal. Oct. 18, 2007) (holding that, because
"plaintiff is a former employee, and the proposed class definition explicitly
envisions a certain proportion of former employees …, the predominant claims in
this action are monetary, and certification under Rule 23(b)(2) is not available");
*accord Harris v. Initial Sec., Inc.*, 2007 WL 703868, at *7 (S.D.N.Y. Mar. 7,
2007); *Jimenez*, 238 F.R.D. at 250; *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D.
229, 245 (C.D. Cal. 2006).

predominate over individual issues under Rule 23(b)(3) is "far more demanding" than the commonality requirement under Rule 23(a)(2). *Id.* at 623-24; *accord White v. Williams*, 208 F.R.D. 123, 131 (D.N.J. 2002) (Pisano, J.). A court must deny Rule 23(b)(3) certification where the essential elements of the claim require individual determination, rather than common proof. *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir. 2002) ("Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of questions of law and fact common to the members of the class."); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 76 & n.21 (D.N.J. 1993) ("[W]hen liability determinations are both individual and fact-intensive, certification under Rule 23(b)(3) is improper.").

Because predominance is a similar – but more demanding – test than commonality, plaintiff fails to satisfy it for the same reasons he fails to satisfy commonality. (*See* Section III.C, *supra*.) Despite Novak's repeated reliance on the job description and company procedures, he presents no evidence that MASMs acted uniformly. Rather, his evidence confirms that the NJWHL claims at issue require a detailed analysis of each individual MASM's day-to-day duties because what matters is "'how the employee actually spends his or her time.'" *Marx*, 882 A.2d at 386 (quoting *Ramirez*, 978 P.2d at 13). Therefore, "no benefit is derived from proceeding as a class action because class membership is not founded upon

any [employer] policy or other generalized proof, but rather on the fact-specific determination of each individual plaintiff's day-to-day tasks." *Safeco*, 223 F.R.D. at 51, 53-54; *see also Bachrach*, 2007 WL 3244186 at *3 (denying Rule 23(b)(3) certification because proving NJWHL misclassification claims "would require individual exploration of each [class] member's specific work habits").

Rule 23(b)(3) certification is also improper because, as recognized by the California Court of Appeals, "Home Depot has a fundamental due process right to raise affirmative defenses as to individual plaintiffs. This right to raise affirmative defenses as to individual plaintiffs, in conjunction with the individual nature of damages in this action makes it difficult to see how class certification would substantially benefit the court." *HDOC-Appellate* (App. 47) at 21 (quoting trial court). If the proposed class were certified, Home Depot would assert individualized factual defenses which would require protracted discovery and mini-trials. Proof of each MASM's actual work, based on the testimony of the particular MASM and other witnesses, would be required. Home Depot might also demonstrate that certain MASMs were underperforming and, therefore, not meeting Home Depot's reasonable expectations for the position. *See Ramirez*, 978 P.2d at 13-14 (time engaged in non-exempt work because of substandard performance should not be considered non-managerial time). Because these defenses require highly individualized evidence, common issues do not

predominate under Rule 23(b)(3). *See Reyes v. Texas EZPawn, L.P.*, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007) (denying class certification because employer's "defenses require individualized evidence, making it difficult for [employer] to defend all of [the plaintiffs'] claims with generalized proof"); *King v. West Corp.*, 2006 WL 118577, at *15 (D. Neb. Jan. 13, 2006) ("Disparate individual defenses heighten the individuality of claims, and requiring the defendant to raise these arguments in a class action suit undermines its ability to mount a clear and coherent defense to the case and significantly complicates trial management.").

Further, if liability were established, each potential class member would have to prove his/her damages by showing, *inter alia*, the hours spent on exempt versus non-exempt duties each week. Because MASMs were not required to "punch a clock," this determination has to be made through the individual, anecdotal recollections of each MASM. Each MASM's damage testimony would also be subject to individual-specific defenses, which will likely involve the testimony of other employees and persons who observed their work. Because the damages sought are individualized and not susceptible to class-wide proof, class treatment is inappropriate. *See Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 419 (5th Cir. 1998) (where damage claims "focus almost entirely on facts and issues

specific to individuals ... an action conducted nominally as a class action would

'degenerate in practice into multiple lawsuits separately tried'") (citations omitted).

In sum, the myriad of individualized issues required to determine each

putative class member's exempt status, address Home Depot's defenses, and

calculate claimed damages, demonstrate that common issues do not predominate

and class certification is unwarranted.[34]

---

[34] Plaintiff's reliance on *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88 (2007), is
misplaced. In that case, plaintiffs alleged that low-paid Wal-Mart hourly workers
were systematically forced to work through meal periods and perform work "off-
the-clock." The workers were indisputably non-exempt and entitled to overtime
pay. Thus, the *Iliadis* plaintiffs' claims involved none of the numerous
individualized issues required in misclassification cases, where a court must
determine employees' exempt status under a multi-factored job duties test. The
other cases cited by plaintiff (*see* Pl. Mem. at 28-31) are likewise inapposite. *See
Ansoumana*, 201 F.R.D. at 89 (low-paid supermarket and drug store delivery
workers, who were indisputably non-exempt, claimed they should have been
treated as employees, rather than independent contractors); *Frank v. Eastman
Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (parties jointly moved to certify
settlement class of 28 individuals; thus, predominance factor was uncontested);
*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) (securities fraud
case alleging common scheme to artificially inflate stock price); *Rossini v. Ogilvy
& Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) (sex discrimination case alleging
pattern or practice of assigning class members to departments or tasks viewed as
"women's work"); *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998)
(sex discrimination case alleging central and systemic failure to prevent and
remedy widespread discrimination); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212
F.R.D. 144 (S.D.N.Y. 2002) (seafaring employees, who were indisputably non-
exempt, claimed that overtime wages were withheld in violation of uniform
employment contracts and collective bargaining agreements).

### b. Novak cannot demonstrate that class treatment is superior to individual claims.

An opt-out class is also not superior to alternatives under Rule 23(b)(3).

Individual MASMs who believe they were misclassified may file separate lawsuits.

Contrary to Novak's argument (*see* Pl. Mem. at 31-32), aggrieved MASMs have

ample incentive to do so. As the California Court of Appeals recently recognized

in *Home Depot Overtime Cases*:

> Using Home Depot's conservative 15 hour per week overtime concession, the lowest paid MASM would stand to recover at least $25,000/year, plus interest, penalties and attorney fees. In short, an individual MASM does have sufficient incentive to pursue a meritorious claim. Further, there are adequate administrative and legal procedures currently in place to provide appropriate relief....

*HDOC-Appellatte* (App. 47) at 15-16 (quoting trial court).[35] As a litigation

alternative, aggrieved MASMs could also file individual claims with the New

Jersey Department of Labor's Wage Collection Division, an efficient and virtually

cost-free method for resolving employee wage and hour claims. *See* N.J.S.A. §

34:11-57-67.

Experience in Novak's parallel FLSA collective action pending before this

Court confirms that class treatment would not be superior to individual actions. In

---

[35] The substantial monetary recovery available to a successful MASM here stands in direct contrast to the "nominal" value of each hourly worker's claim in *Iliadis*, 191 N.J. at 115, the case upon which plaintiff relies. (*See* Pl. Mem. at 31-32.) Individual MASMs have ample economic incentive to pursue separate lawsuits or administrative claims if they believe they have been misclassified.

*Elmaghraby & Novak v. Home Depot U.S.A., Inc.*, Civil Action No. 04-cv-4100 (PGS) (ES), Novak asserts virtually indistinguishable claims on behalf of a nationwide class of current and former MASMs.[36] In the FLSA Action, MASMs who worked in New Jersey during the statutory period received notice and had the opportunity to opt-in. (*See* Certification of Patrick G. Brady, Esq. (App. 1) ¶ 2.) However, only ___ of those individuals elected to do so – an opt-in rate of less than ___ percent. (*See id.*) This demonstrates that the vast majority of the proposed class members either: (a) do not believe that they were misclassified as exempt from overtime pay, or (b) are not interested in having their claims adjudicated on a class basis. Forcing the ___ percent who declined to opt-in to be bound by the result in this action unless they affirmatively opt-out would certainly not be superior under these circumstances.

As recognized by the California courts, in misclassification cases such as this where the evidence shows significant individual variation, "a basic fairness concern arises in the use of the class action procedure." *HDOC-Appellate* (App. 47) at 15 (quoting trial court). If the Court were to determine that the class is properly classified as exempt, no MASM in the class would recover. On the other

---

[36] The FLSA Action was "conditionally" certified under the initial, lenient conditional certification standard that applies to FLSA collective actions when little or no discovery has been conducted. *See, e.g., EEOC v. MCI Int'l, Inc.*, 829 F. Supp. 1438, 1445-46 (D.N.J. 1993) (Barry, J.). Rule 23 requirements are far more rigorous. Home Depot intends to file a motion to decertify the collective claims in the FLSA Action after the close of relevant discovery.

CONFIDENTIAL—
Portions To Be Filed Under Seal

hand, if the Court were to find that the class is not exempt, exempt MASMs would be eligible to recover overtime. This could result in a "potential windfall" or a "deprivation" to some percentage of the class population. *Id.* While Home Depot's due process right to assert MASM-specific affirmative defenses "[a]rguably ... protect[s] Home Depot from the windfall scenario, ... there is nothing to protect deserving MASMs in the face of an adverse finding as to the class." *HDOC-Superior* (App. 48) at 5. As such, the "all-or-nothing" approach inherent in the class treatment of misclassification claims is not superior to individual claims. Because neither the predominance nor superiority elements of Rule 23(b)(3) are satisfied, Novak's motion must be denied.

Finally, Novak cannot attempt to rewrite the requirements of Rule 23 by relying upon a manipulation of the rule to create "hybrid" classes. Plaintiff must satisfy all of the criteria for <u>either</u> a Rule 23(b)(2) class <u>or</u> a Rule 23(b)(3) class, not some combination of the two. *See* 3B *Moore's Fed. Practice* ¶ 23.40[4]; *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931); *Allison*, 151 F.3d at 425.

## IV. CONCLUSION

Novak cannot meet his burden of proving that class treatment of his NJWHL claim is appropriate under Rule 23. Instead, the record evidence demonstrates that resolution of his claim raises highly individualized, fact-intensive issues not

amenable to class-wide proof. For the above reasons, defendant requests that Novak's motion for class certification be denied and that Novak's claims proceed individually.

Respectfully submitted, this 8th day of February, 2008.

PATRICK G. BRADY, ESQ.
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
pbrady@mdmc-law.com

BY: <u>s/ Patrick G. Brady</u>
Patrick G. Brady
A Member of the Firm

R. LAWRENCE ASHE, JR., ESQ.
**ASHE, RAFUSE & HILL LLP**
1355 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309-3232

Attorneys for Defendant

1031-0027.457