# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWARD NOVAK,           )
individually and on behalf of all  )
persons similarly situated,     )
                            )    CIVIL ACTION NO.
        Plaintiff,      )    3:06-cv-04841 (GEB)(TJB)
                            )
v.                    )    <u>Document To Be Filed Electronically</u>
                            )
HOME DEPOT U.S.A., INC.,   )
                            )
        Defendant.    )

## DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

PATRICK G. BRADY, ESQ.      Gibbons P.C.
    Of Counsel.             One Gateway Center
                            Newark, New Jersey 07102
                            (973) 596-4500

R. LAWRENCE ASHE, JR., ESQ.   Ashe, Rafuse & Hill LLP
*(Pro Hac Vice)*              1355 Peachtree Street, N.E.
TRACEY T. BARBAREE, ESQ.    Suite 500
*(Pro Hac Vice)*              Atlanta, Georgia 30309
GREGORY R. FIDLON, ESQ.      (404) 253-6000
*(Pro Hac Vice)*

JOEL M. COHN, ESQ.          Akin Gump Strauss Hauer & Feld LLP
*(Pro Hac Vice Pending)*      1333 New Hampshire Avenue, NW
    On the Brief.           Washington, DC 20036
                            (202) 887-4000

                            Attorneys for Defendant.

#1326167 v1
104867-62425

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................... 1

II.     DISCUSSION ................................................................................. 1

        A.      The Depositions Confirm The Wide Variation In The Situations
                Of MASMs. ......................................................................... 1

                1.      Primary duty ............................................................ 2

                2.      Personnel decisions ................................................. 8

                3.      Time spent on exempt and non-exempt work ........... 10

        B.      The Depositions Confirm The Clear Distinction Between The
                Work Of MASMs And Department Supervisors. ................... 14

        C.      The Depositions Confirm That The Declarations Were Given
                Voluntarily. ....................................................................... 18

III.    CONCLUSION ............................................................................ 20

## I.  INTRODUCTION

By leave of Court, by Order dated June 25, 2008, defendant Home Depot U.S.A., Inc. ("Home Depot") files this supplement to its Opposition to Plaintiff's Motion for Class Certification ("Opp."). The purpose of this filing is to call the Court's attention to relevant testimony from the depositions taken by plaintiff, after the filing of Home Depot's Opposition, of 16 of the 18 individuals whose declarations Home Depot submitted in support of its Opposition.

These depositions confirm that plaintiff Novak's misclassification claims raise highly individualized factual issues, and they further demonstrate the wide variation among potential class members as to the key elements of the executive exemption of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a, *et seq.* Accordingly, plaintiff's motion for certification, pursuant to Federal Rule of Civil Procedure 23, of a statewide class of Home Depot Merchandising Assistant Store Managers ("MASMs") should be denied.

## II.  DISCUSSION

### A.  The Depositions Confirm The Wide Variation In The Situations Of MASMs.

In examining relevant variations in testimony within the alleged class, this supplemental filing follows the same organization that is used in the Opposition: (1) evidence relating to the analysis of the "primary duty" of the MASM; (2) evidence relating to the MASM's authority to make or recommend personnel

1

decisions; and (3) evidence relating to the amount of time each MASM spends performing exempt and non-exempt work.

### 1. Primary duty

Novak asserts that his primary duties were routine rather than managerial tasks. As Home Depot showed in its Opposition, however, Novak was regularly involved in numerous managerial activities – *e.g.*, hiring, forecasting, handling of customer and employee complaints, ordering, training, and discipline. Opp. at 4-5. The same is true of the latest group of deponents.[1]

Of those individuals deposed by plaintiff in the latest round, the declarant whose testimony most closely resembled Novak's was Hector DeLeon, a former MASM who was fired by Home Depot for dishonesty. *See* Deposition of Hector DeLeon ("DeLeon dep."), attached as Exhibit D to the Supp. Brady dec., at 86-87. DeLeon testified that at some of his stores the departments he managed were understaffed, and that this forced him to spend large amounts of time performing non-exempt tasks. *Id.* at 17-23. As a result, DeLeon claimed, he did not have enough time to meet his obligations as a manager. *Id.* at 33-34. In so testifying,

---

[1] *See, e.g.*, Deposition of David Decher ("Decher dep."), attached as Exhibit A to the Supplemental Declaration of Patrick G. Brady ("Supp. Brady dec."), served herewith, at 89-90, 94, 97, 116-17, 124; Deposition of Fernando Diaz ("Diaz dep."), attached as Exhibit B to the Supp. Brady dec., at 41, 48-49, 51-52, 54-55,

104867-62425

DeLeon acknowledged that Home Depot *expected him to perform as a manager*. *Id.* at 32-33.

DeLeon also acknowledged that he did, in fact, perform a wide array of managerial functions – interviewing applicants, making recommendations as to hiring and firing, disciplining employees, evaluating employees and then making recommendations as to their pay, adjusting employee schedules (with the approval of the store manager), and moving employees from one department to another. *Id.* at 35-36, 46, 50, 58, 105, 124. In his declaration, DeLeon stated under penalty of perjury that he spent approximately 30 hours per week performing tasks that are also performed by hourly associates. Declaration of Hector DeLeon, attached as Exhibit 21 to the Certification of Patrick G. Brady, dated February 8, 2008, at ¶ 34. He also said that this time overlaps with time spent performing his managerial tasks. *Id.* Thus, to the extent that DeLeon now claims that non-exempt work dominated his 58- to 70-hour work week (*Id.* at ¶ 5), his contradictory testimony underscores the highly individualized, fact-intensive nature of the "primary duty" inquiry.

Moreover, the testimony of other declarants varies sharply from DeLeon's in this regard. Michael McGeachy was quite clear that directing the work force was

<hr/>

56; Deposition of William Thurman ("Thurman dep."), attached as Exhibit C to the

104867-62425

his primary duty as a Home Depot MASM. Deposition of Michael McGeachy ("McGeachy dep."), attached as Exhibit E to the Supp. Brady dec. at 17, 34. William Thurman described his primary duty as making the sales goals of the stores where he was an MASM by ensuring proper levels of products, the right personnel, and the best methods for driving sales. Thurman dep. (Exh. C), at 28-29.

Nor did other declarants agree that they lacked sufficient staffing, the alleged cause of DeLeon's ignoring his managerial duties. Plaintiff asked several other former Home Depot employees about staffing. Edward Merklin, a former MASM at Home Depot who now works for its competitor Lowes, testified that there were no situations where he believed the departments he managed were understaffed. Deposition of Edward Merklin ("Merklin dep."), attached as Exhibit F to the Supp. Brady dec., at 23. Fred Cassi, another former Home Depot employee, recalled that understaffing was sometimes a problem at the Cape May store during the busy summer season. Deposition of Fred Cassi ("Cassi dep."), attached as Exhibit G to the Supp. Brady dec., at 33-34. However, he responded by shifting associates from department to department. *Id.* at 34. Virginia Davidson could not recall being short of staff, though she admitted that it likely happened on occasion. Deposition

---

Supp. Brady dec., at 55-56, 66, 68-69, 73-77.

104867-62425

of Virginia Davidson ("Davidson dep."), attached as Exhibit H to the Supp. Brady dec., at 54.

The recent depositions also confirm that factors specific to a given store have an impact on the duties of a particular MASM. Cassi was an MASM at the Vineland and Cape May stores. Cassi dep. (Exh. G), at 5. Vineland normally had more sales than Cape May, but Cape May was busier during the summer. *Id.* at 33. These variations affected the extent to which he engaged in tasks such as stocking shelves. *Id.* at 47.

Similarly, David Decher, who was an MASM at the East Windsor and West Windsor stores, observed major differences between the two in terms of size, number of employees, and retention of employees (and therefore the experience level of the workforce). Decher dep. (Exh. A), at 30-31. These differences affected the extent to which Decher had associates available to service customers, and thus the extent to which he serviced customers himself. *Id.* at 51-53, 91. In this regard, with the more experienced work force at West Windsor, Decher was able to spend less time on customer interaction and on training associates. *Id.* at 111-12.

Stores also varied with respect to the number of MASMs they employed. For example, Kenneth Jastrzebski testified that, for a time, he was the only MASM at the Mansfield store. Deposition of Kenneth Jastrzebski ("Jastrzebski dep."),

104867-62425

attached as Exhibit I to the Supp. Brady dec., at 40.  During that period, he had to work significantly longer hours, and spend more time lifting freight and taking care of customers.  *Id.*

The individual style of the store manager also affected how the declarant MASMs performed their job and allocated their time.  Decher testified that the amount of time he devoted to particular tasks varied depending on who his store manager was.  Decher dep. (Exh. A), at 123.  DeLeon concurred.  DeLeon dep. (Exh. D), at 27-29.

The style of the MASM also came into play.  According to Cassi, some were more "hands-on" than others.  Cassi dep. (Exh. G), at 73-74.  Hands-on MASMs were more inclined to pitch in on tasks performed by hourly employees.  *Id.* Stephen Payne observed the same difference.  He testified that "some [M]ASMs are more working [M]ASMs than ones that just want to bark orders."  Deposition of Stephen Payne ("Payne dep."), attached as Exhibit J to the Supp. Brady dec., at 52.  DeLeon also acknowledged that the extent to which MASMs performed such tasks as stocking shelves and sweeping "differed from assistant store manager to assistant store manager."  DeLeon dep. (Exh. D), at 129.

As demonstrated in Home Depot's opposition, the number and nature of the departments that an MASM oversees affects the duties performed by the MASM and the amount of time spent performing them.  Opp. at 10-12.  Plaintiff himself

6

104867-62425

testified that determining whether he meets the "primary duty" requirement for the executive exemption will require consideration of such factors as the number of departments he oversaw, the nature of those departments, and their staffing level. *Id.* at 12.

The latest depositions confirm the significant variation in these factors. For example, as an MASM at the Vineland store, Fred Cassi was responsible for two departments: garden and electrical. Cassi Dep. (Exh. G), at 5. The garden department had four to 20 employees depending on the season; the electrical department had six to eight. *Id.* at 13, 15. MASM Michael McGeachy, on the other hand, was assigned five departments at the West Windsor store, including garden. McGeachy dep. (Exh. E), at 20. His garden department had as many as 30 employees during the peak season. *Id.* at 25. William Thurman is responsible for seven departments, Thurman dep. (Exh. C), at 6-7; similarly, Mark McCabe was assigned six or seven departments before becoming a store manager. Deposition of Mark McCabe ("McCabe dep."), attached as Exhibit K to the Supp. Brady dec., at 7. But Stephen Riviera had only two departments when he was an MASM at the Jersey City store. Deposition of Stephen Riviera ("Riviera dep."), attached as Exhibit L to the Supp. Brady dec., at 27.

Over the course of a career, the number of departments an MASM manages typically varies. Although Riviera was responsible for only two departments in

7

Jersey City, he was in charge of four at the West Long Branch store. *Id.* at 27, 45.

David Decher managed as few as three departments and as many as six during his

career. Decher dep. (Exh. A), at 5-6, 18-19. In short, an analysis of the "primary

duty" issue for the declarants (as for all putative "class members") will require an

individual-specific analysis of: (1) the number of departments overseen; (2) the

nature of departments; and (3) the number of employees. This analysis will usually

vary over time even as to a given MASM.

### 2. <u>Personnel decisions</u>

Home Depot has already established through the testimony of plaintiff's

witnesses that the involvement of the MASM's in hiring and other personnel

decisions varies by individual MASM and by store. Opp. at 12-14. The same

picture is presented by the recent depositions of the declarants.

With respect to hiring, the witnesses testified that their participation ranged

from being tangentially involved on the one hand, to making the final decision on

the other. Thus, Stephen Payne testified that he viewed hiring as the responsibility

of human resources, though he sometimes participated in the process. Payne dep.

(Exh. J), at 54-55. The remaining witnesses all were consistently involved in the

hiring process, but to different degrees and with different levels of authority. The

interview process includes a first and a second interview. Leon Bennett would

conduct the first interview, but not the second. Deposition of Leon Bennett

8

("Bennett dep."), attached as Exhibit M to the Supp. Brady dec., at 50. Fred Cassi, by contrast, typically did the second interview, but not the first. Cassi dep. (Exh. G), at 29-30. Edward Merklin handled the first and at times also participated in the second interview. Merklin dep. (Exh. F), at 41-42. Hector DeLeon testified that the involvement of a given MASM with interviewing varied based on whether the MASM felt comfortable conducting interviews. DeLeon dep. (Exh. D), at 115. Alexander Calderon testified that MASMs were involved in interviews for the staffing of their assigned departments as well as the rest of the store. Deposition of Alexander Calderon ("Calderon dep."), attached as Exhibit N to the Supp. Brady dec., at 50.

As to the ultimate hiring decision, Cassi, Merklin, DeLeon, and Jastrzebski all said that this was their store manager's responsibility, although they provided input. Cassi dep. (Exh. G), at 30-31; Merklin dep. (Exh. F), at 47; DeLeon dep. (Exh. D), at 38; Jastrzebski dep. (Exh. I), at 64-65. However, William Thurman testified that he had authority to decide whom to hire and sometimes made offers immediately following the initial interview. Thurman dep. (Exh. C), at 49, 55. Similarly, David Decher could make hiring decisions without approval of the store manager. Decher dep. (Exh. A), at 56-57.

The role of the declarants regarding pay raises for subordinate employees also varied. Decher testified that the rating he gave his employees determined their

9

104867-62425

raises. *Id.* at 117. Thurman stated that raises for his employees were determined by a team of which he was a member. Thurman dep. (Exh. C), at 69. DeLeon testified that he made pay recommendations that sometimes were rejected, but more often were followed. DeLeon dep. (Exh. D), at 124.

### 3.    <u>Time spent on exempt and non-exempt work</u>

Home Depot established through previous deposition testimony that the percentage of time MASMs spend performing exempt versus non-exempt work varies among individual MASMs. Opp. at 15-18. Therefore, as one of Novak's witnesses acknowledged, determining the respective percentages of exempt and non-exempt work would require asking each MASM to break down his or her time, an exercise hardly amenable to class treatment. *Id.* at 15.

The recent set of depositions shows this to be true. For one thing, as with those previously deposed, the number of total hours worked by various MASMs varied significantly. Thus, Hector DeLeon testified that he worked an average of 65 to 75 hours per week during half of the year and sometimes worked as many as 90. DeLeon dep. (Exh. D), at 11, 29. But other MASMs worked far less. Mark McCabe worked an average of 60 hours per week, McCabe dep. (Exh. K), at 20; David Decher, Kenneth Jastrzebski, and Michael McGeachy about 55, Decher dep. (Exh. A), at 23, Jastrzebski dep. (Exh. I), at 5, McGeachy dep. (Exh. E), at 17-18; and Virginia Davidson 50 to 55 hours. Davidson dep. (Exh. H), at 21. Edward

104867-62425

Merklin worked more than 55 hours a week when he first started as an MASM, but his hours decreased as he became more experienced. Merklin dep. (Exh. F), at 36-37.

There was also significant variation in the testimony as to the amounts of time the declarants spent on particular tasks. For example, Stephen Payne testified he spent about two hours per day (10 hours per week) planning and directing the work of other employees. Payne dep. (Exh. J), at 49. By contrast, Stephen Riviera spent approximately 27 hours per week, and Michael McGeachy at least 40 per week (eight or nine hours per day), performing this work. Riviera dep. (Exh. L), at 102-03; McGeachy dep. (Exh. E), at 34.

DeLeon testified that (contrary to what he said in his declaration) he spent most of his time on "tasking duties." DeLeon dep. (Exh. D), at 47. He claimed, for example, that he spent several hours per day on stocking and at least another hour unloading freight. *Id.* at 67, 70. Payne spent about two hours a day stocking, but did not handle freight on a daily basis. Payne dep. (Exh. J), at 72, 75.

Fernando Diaz, however, testified that he spends very little time stocking. Diaz dep. (Exh. B), at 64-65. Similarly, Decher testified that he neither stocks nor unloads freight on a daily basis. Decher dep. (Exh. A), at 98, 100. Thurman stocks shelves only a few times per week. Thurman dep. (Exh. C), at 82. In Merklin's case, the amount of time he spent stocking varied with the season. Merklin dep.

104867-62425

(Exh. F), at 68-69.  During the spring, he stocked shelves daily, with the amount of

time ranging from 30 minutes to a few hours.  *Id.* at 69-70.  But in other seasons,

Merklin did not perform this work daily.  *Id.* at 68-70.

As this testimony suggests, the MASMs had, and used, the discretion to

determine whether to perform routine functions such as stocking themselves or to

have them performed by hourly associates.  *See, e.g., id.* at 98; Davidson dep.

(Exh. H), at 65-66.  In any event, the jury will have to engage in individual

inquiries to determine the extent to which each MASM performed such non-

exempt tasks.

As with Novak's witnesses, the testimony regarding routine tasks such as

stocking shelves illustrates an additional complication – the need for individual

inquiry to determine whether particular duties are exempt in light of the context

and purpose for which they are performed.  Thus, although Thurman testified that

he stocked shelves several times a week, he always did this while working side-by-

side with an associate in order to provide training and/or to talk with the associate.

Thurman dep. (Exh. C), at 82.  Calderon testified that he would perform tasks such

as sweeping to coach hourly associates regarding the correct technique.  Calderon

dep. (Exh. N), at 82.  McCabe testified that he could be servicing a customer while

at the same time training an hourly associate or department supervisor on how to

handle customers.  McCabe dep. (Exh. K), at 33-34.  Similarly, Merklin engaged in

104867-62425

routine tasks like stocking in order to teach, train, and lead by example. Merklin dep. (Exh. F), at 98. While doing so, Merklin remained responsible for the success of his multiple departments and "continued to supervise the associates in those departments." *Id.* at 99.

The testimony regarding customer service shows the same complication. All of the declarants helped customers when no one else was available to assist. But some also testified that they provided customer service alongside associates for the purpose, in whole or in part, of training them. For example, McGeachy testified that he sometimes brought in associates when he served customers to provide them with a learning experience. McGeachy dep. (Exh. E), at 53. *See also* Davidson dep. (Exh. H), at 40 (time spent servicing customers was a "big blend" of activities including teaching).

Most of the declarants also affirmed that they managed their departments while they helped customers. Payne said that, as he worked with customers, he was also evaluating employees in the department where he was providing this service. Payne dep. (Exh. J), at 70. McGeachy monitored and directed employees while he provided customer service. McGeachy dep. (Exh. E), at 54-55. So did Thurman. Thurman dep. (Exh. C), at 62-63. Davidson testified that as she walked the store "to see what's going on" and to "jot[] things down," she would assist customers at the same time. Davidson dep. (Exh. H), at 65. And Cassi recalled

104867-62425

that no customer service issue ever caused him to "lose focus on what was going on in the building." Cassi dep. (Exh. G), at 89.

### B.     The Depositions Confirm The Clear Distinction Between The Work Of MASMs And Department Supervisors.

Plaintiff's counsel asked each declarant about the relationship between his or her work and that of the department supervisors. Their testimony shows that while there is some overlap, the MASMs have significantly more authority and discretion than the department supervisors.

As Fred Cassi testified, the department supervisor's duty is to oversee and manage one particular department. Cassi dep. (Exh. G), at 71. MASMs, on the other hand, are responsible for managing multiple departments, and are ultimately responsible for the success or failure of the departments they oversee. *Id.* at 71-72. Or, as Hector DeLeon testified, the department supervisor and the MASM have "a lot of similarities. . .[b]ut obviously the assistant store manager…is ultimately responsible for the store…and what's going on within that store versus a [department] supervisor is mainly responsible for his department. . . ." DeLeon dep. (Exh. D), at 120-21; *see also* Decher dep. (Exh. A), at 114 (primary role of department supervisor is to "supervise his individual people on a daily basis to accomplish the tasks in his department" while the MASM "is there to instruct and coach and train the department [supervisors] in getting and providing support for

14

them"); Diaz dep. (Exh. B), at 59 (the MASM "has an aggregate responsibility over the whole store" and must "be available to driving sales, to ensuring levels of customer service are being met, to making sure the building is safe. . .[to] being responsible to the asset…protection and profit protection of the store. . .it's more of a global responsibility).

This fundamental difference in role manifests itself in differences as to the concrete duties of MASMs and department supervisors. For example, department supervisors typically do not handle media inquiries or emergency situations, or sign off on hazardous materials; MASMs do. *See* Decher dep. (Exh. A), at 115. *See also* DeLeon dep. (Exh. D), at 123-24 (the MASM, but not the department supervisor, handles media inquiries and deals with medical emergencies). And MASMs are authorized to issue more severe forms of discipline than department supervisors. *See* Cassi dep. (Exh. G), at 76; McGeachy dep. (Exh. E), at 55-56; DeLeon dep. (Exh. D), at 122-23; Thurman dep. (Exh. C), at 73-74 (department supervisors "write- up" associates, but MASM must review and sign the write-up before it can be issued).

Department supervisors play a minimal role, if any, in the hiring process. As noted, most of the MASM declarants actively participate in interviewing applicants and, at a minimum, make effective recommendations as to which applicants Home Depot should hire. By contrast, department supervisors typically are not involved

15

104867-62425

in interviewing. *See, e.g.,* Bennett dep. (Exh. M), at 42; Decher dep. (Exh. A), at 68-69; Calderon dep. (Exh. N), at 48-49; Davidson dep. (Exh. H), at 47; Payne dep. (Exh. J), at 56. However, this was not uniform across all departments in all stores. *See, e.g.,* McGeachy dep. (Exh. E), at 38 (department supervisors interviewed and made hiring recommendations); DeLeon dep. (Exh. D), at 38 (department supervisors interviewed applicants, but not by themselves).

As compared to MASMs, the duties of department supervisors are limited in other respects, as well. Thus, DeLeon testified that department supervisors usually did not conduct training of new associates. DeLeon dep. (Exh. D), at 54. Training was a significant responsibility of the MASMs. *See, e.g.,* Bennett dep. (Exh. M), at 74-75; Diaz dep. (Exh. B), at 38 (five to seven hours per week). Moreover, department supervisors had a lesser role than MASMs when it came to decisions about employee pay raises. *See, e.g.,* Thurman dep. (Exh. C), at 70 (department supervisors not involved);[2] Merklin dep. (Exh. F), at 58 (department supervisors were involved at some times). Thurman also testified that MASMs made decisions about the placement of products in the store, whereas department supervisors did not. Thurman dep. (Exh. C), at 94. MASMs decided whether to approve certain types of inventory order; department supervisors did not. Calderon dep. (Exh. N),

16

104867-62425

at 79-80.  Davidson testified that department supervisors did not attend managerial staff meetings.  Davidson dep. (Exh. H), at 49.

The testimony also shows that, to the extent MASMs provided customer service, they did so at a different level than department supervisors and other hourly employees.  Thus, although MASMs did assist customers at a one-on-one level when no one else was available, they generally used hourly employees as the store's first point of contact with customers.  *See, e.g.*, Diaz dep. (Exh. B), at 62; Thurman dep. (Exh. C), at 47.  Unless no hourly employees were available, the MASM, exercising discretion, would make the decision whether to provide customer service himself or herself based on an assessment of, for example, the nature of the problem, the skill sets of sales associates, and the needs of the store. *See, e.g.*, Bennett dep. (Exh. M), at 34-35; Cassi dep. (Exh. G), at 82; Decher dep. (Exh. A), at 110-11; Diaz dep. (Exh. B), at 62 (MASM intervenes "if the customer has a concern that has been escalated past the comfort level of an associate or department head").

In fact, the depositions showed that at least some MASMs view the concept of customer service much more broadly than simply direct customer interaction. As Decher put it:

---

[2]  As Thurman testified, MASMs participated in the teams that made these

17

Customer service not only involves being personally involved with taking care of the customers and their projects but it also involves maintaining a store appearance that is conducive for a customer to shop. It's also making sure that the product is on our shelves. . .That's part of customer service. Making sure that carts are available up front, accessibility. I'm also responsible for making sure that the associates are there engaged on the sales floor and that's also providing customer service.

Decher dep. (Exh. A), at 109-10. *See also* McGeachy dep. (Exh. E), at 53-54; Davidson dep. (Exh. H), at 23 (managers were helping customers "no matter what you're doing"). In short, that MASMs provided "customer service" does not militate against finding them exempt, and individual inquiry will be called for to determine the context, and the sense, in which they provided such service.

### C. The Depositions Confirm That The Declarations Were Given Voluntarily.

Plaintiff's counsel asked each declarant about the circumstances surrounding the execution of his or her declaration. The testimony showed that each declarant agreed to talk to Home Depot's lawyers voluntarily; was presented with a draft declaration prepared by Home Depot based on the interview; agreed to sign the declaration voluntary; and had the opportunity to review the declaration, and to make changes before signing.[3]

---

decisions. *Id.* at 69.

[3] Moreover, we note that plaintiff chose to depose 16 of Home Depot's declarants. As such, any argument plaintiff may now assert with respect to the substance of their declarations has been removed by virtue of plaintiff's opportunity to cross-

104867-62425

This testimony was consistent whether the declarant was a current or former Home Depot employee.[4] Former employee Edward Merklin affirmed that it was completely voluntarily for him to participate in the interview and declaration. Merklin dep. (Exh. F), at 94. He also testified he had the opportunity to carefully review the declaration document before signing it and believed that it was truthful and accurate to the best of his knowledge at the time. *Id.* Similarly, Fred Cassi recalled that he had the option of not participating in the process that led to his declaration. Cassi dep. (Exh. G), at 9. He added that it was his "voluntary choice" to participate in the interview and sign the declaration, although he felt obligated to do so because "it was the right thing to do." *Id.* at 70. Cassi had the chance to review the declaration before signing it, and believed the statements therein were truthful and accurate. *Id.* at 70-71. Hector DeLeon also reviewed his declaration before signing it, but he could not remember how carefully. DeLeon dep. (Exh.

---

examine. *See, e.g.*, *United States v. Hamilton*, No. CR407-122, 2007 U.S. Dist. LEXIS 65082, *5 (S.D. Ga. Aug. 31, 2007) (court would give an affidavit "little weight" in light of testimony of witnesses exposed to the "cleansing fire of cross-examination."); *Zeneca, Inc. v. Eli Lilly & Co.*, No. 99 Civ. 1452 (JGK), 1999 U.S. Dist. LEXIS 10852, *12 (S.D.N.Y. July 15, 1999) ("[T]he affidavits are necessarily of less weight than the live testimony of witnesses who were available and subject to cross-examination at the hearing."); *U.S. v. White*, 847 F. Supp. 219, 224 (D. Mass. 1994) ("we give greater weight to the testimony, which was subject to cross-examination, than to the affidavits.").

[4] *See, e.g.*, Bennett dep. (Exh. M), at 14, 26; Decher dep. (Exh. A), at 12, 15; Riviera dep. (Exh. L), at 14-16; Calderon dep. (Exh. N), at 11, 16.

104867-62425

D), at 9, 117. He testified that he would not have signed the declaration if he thought anything contained in it was inaccurate. *Id.* at 118. DeLeon did not claim that his participation was coerced.

## III. <u>CONCLUSION</u>

For the above reasons, and those set forth in its Opposition, defendant Home Depot requests that Novak's motion for class certification be denied and that Novak's claims proceed individually.

Respectfully submitted, this 21st day of July, 2008.

PATRICK G. BRADY, ESQ.
**Gibbons P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
pbrady@gibbonslaw.com

BY: <u>s/ Patrick G. Brady</u>
Patrick G. Brady
A Member of the Firm

JOEL M. COHN, ESQ.
*Pro Hac Vice Pending*
**Akin Gump Strauss Hauer & Feld LLP**
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 887-4000

104867-62425

R. LAWRENCE ASHE, JR. ESQ.
*Pro Hac Vice*
TRACEY T. BARBAREE, ESQ.
*Pro Hac Vice*
GREGORY R. FIDLON, ESQ.
*Pro Hac Vice*
**Ashe, Rafuse & Hill LLP**
1355 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309
(404) 253-6000

Attorneys for Defendant

104867-62425