UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

—————————————————————
                                      :
EDWARD NOVAK,                         :
                                      :
                 Plaintiff,           :        Civil Action No. 06-4841
                                      :
                 v.                   :        OPINION AND ORDER
                                      :
HOME DEPOT U.S.A., INC.,              :
                                      :
                 Defendant.           :
—————————————————————  :

SHERIDAN, U.S.D.J.

       This matter comes before the Court on the plaintiff, Edward Novak's, motion for class

certification.  For the following reasons, this Court denies Plaintiff's motion.

I.

       The named plaintiff, Edward Novak, brings this class action claim on behalf of all

Merchandising Assistant Store Managers (MASMs), current and former, who were employed by

Home Depot in the State of New Jersey from August 25, 2002 to the present.  Novak is a New

Jersey resident who previously was employed by Home Depot in the position of MASM.

       Defendant, Home Depot, is a Delaware corporation with its principal offices located in

Georgia. Plaintiff alleges that MASMs were mis-classified by Home Depot as exempt from state

overtime pay requirements so that Defendant could save on payroll.  The New Jersey Wage and

Hour Law, N.J.S.A. 34:11-56a4, requires employers to pay overtime (time and a half) to

employees working over 40 hours per week unless the employer establishes the right to an

exemption from the overtime obligation.  Workers in management positions are ordinarily

exempt, and Home Depot contends that a MASM is a manager and thus qualifies for this

exemption.  Plaintiff counters that, in actuality, MASMs have little or no management

responsibilities, and are more akin to stock clerks who are hourly employees and who are

generally paid overtime.

A recent posting on Home Depot's website for the job of MASM described the position

as follows:

> Assistant Store Managers (ASMs) are responsible for providing
> Customers with a convenient and enjoyable shopping experience.
> They work to create an inviting shopping environment for
> Customers by meeting their project needs quickly and fully. They
> work with the Store Manager to develop strategies and objectives
> to drive sales and profitability. They provide leadership to
> Associates so that these strategies and objectives are executed
> successfully. Sales ASMs must analyze trends, solve problems and
> develop themselves and their Associates in order to maximize
> contribution to store success. They must also be capable of
> working with Associates, the Store Manager and other ASMs to
> accomplish goals.[1]

MASM is a salaried position that requires a "flexible, 55 hours per week schedule."  *Id.*

MASMs are the second highest-ranking managers in a store, subordinate to the Store Manager.

The MASM job is a difficult and demanding one.  The hours worked vary significantly,

anywhere from 55 to 85 hours per week.  Witnesses have testified about working for more than

30 hours straight without a break.

Deposition testimony establishes that MASMs' jobs include many non-managerial duties.

Examples of these activities include cleaning, stocking items, customer service, packing freight,

operating equipment, sweeping, mopping, mixing paint, and painting displays.  On the other

---

[1]     Merchandising Assistant Store Manager (# 61395), Scottsdale, AZ;
https://careers.homedepot.com/cg/proJobDetail.do;jsessionid=9C0968B658C6A29B6041AE5E9
25F6E0D?id=Merchandising%20Assistant%20Store%20Manager&selectedJobId=28462 (last
visited Aug. 13, 2009).

hand, Defendant's deposition testimony establishes that MASMs' jobs include many managerial duties as well.  Examples include involvement in the hiring process, ensuring employees adhere to company policies and obey the law, analyzing how many labor hours are needed to staff each store adequately, ensuring that materials are in stock, ordering inventory, recommending employee promotions and pay raises, discipline and termination of employees, and ensuring that hourly associates complete required training.

Plaintiff argues that through common evidence he can demonstrate that each and every New Jersey MASM is and was unlawfully classified as exempt, *i.e.*, as a management employee. Novak alleges that MASMs' non-managerial duties overwhelm any managerial or strategic duties, and the mis-classification of MASMs as exempt employees is a widespread and repeated pattern throughout the State of New Jersey.  Much of this common evidence set forth by Plaintiff is derived from how Home Depot defines the MASM position.  (*See, e.g.,* Opinion at p. 2). Plaintiff argues that due to Home Depot's centralized corporate structure, MASMs' duties are identical.  MASMs are, apparently, interchangeable and are frequently transferred from store to store.  Additionally, all MASMs undergo a uniform nationwide training program and receive the same training materials which are centrally produced at Home Depot's headquarters in Atlanta. MASMs' job duties are further standardized through staffing graphs generated for each store from Home Depot's headquarters.  It is a labor matrix that computes stores' and store departments' employee hours, company-wide Standard Operating Procedures, and a centralized system for making key decisions, regarding areas such as purchases and store performance, that applies to each store.  And Plaintiff avers that a comparison of the MASM job description with the job descriptions of Home Depot non-exempt employees, such as sales associates and

department supervisors, reveals that all these positions are substantially similar.

However, according to the testimony of many MASMs, the actual day-to-day duties of a MASM are not nearly as uniform as their job description.  During the relevant period, Home Depot has operated between 56 and 67 retail stores in New Jersey.  These stores have significant differences among them which impact MASMs' day-to-day responsibilities and duties.  For instance, within New Jersey, some stores are in high-volume urban areas, while others are in less densely populated rural locations.  Stores in New Jersey differ in size from approximately 46,000 to 236,000 square feet (generally, the larger the store, the larger that store's sales volume).  The stores also contain a varied assortment of Home Depot's eleven core merchandising departments: Lumber, Building Materials, Flooring, Paint, Hardware, Plumbing, Electrical, Garden, Kitchen & Bath, Millwork, and Decor.  These departments are each generally assigned at least one department supervisor who reports directly to the MASM managing that department.  At each store, the number of MASMs varies from one to seven. According to testimony, a MASM could manage anywhere from one to eleven merchandising departments.  The depositions state:

| MASM | Number of Departments Managed | Transcript Citation |
|------|-------------------------------|---------------------|
| Cassi | 2 | Cassi T 5:18-22 |
| McGeachy | 5 | McGeachy T 20:9-12 |
| Thurman | 6 | Thurman T 6:20-7:1 |
| Riviera | 2 | Riviera T 27:13-23. |

Obviously, the number of departments assigned will alter the number of employees supervised, if any.  In addition, the duties of a MASM who manages the same department at different stores vary, due to differences among stores.  For example, the number of hourly workers in a single

department may range from three to twenty.

Many MASMs testified that their job responsibilities change considerably depending upon the circumstances.  In fact, the testimony of the MASMs was widely diverse.   The Court cites to five separate examples presented below.

Example 1 - Supervisory Responsibilities

Most MASMs discussed their supervisor responsibilities.  MASM Michael McGeachy spent about 40 hours per week "apportioning, planning and directing the work" of others.  He stated:

> Q.  How much time do you spend apportioning, planning and directing the work by other employees?
>
> A.  Most of my day.
>
> Q.  Is it difficult to actually give a specific number?
>
> A.  Eight to nine hours.

(McGeachy T 34:13-22).  Unlike McGeachy, MASM Stephen Payne spends "two hours a day" supervising others. (Payne T 49:5-7).  He stated:

> Q.  Home much time did you spend planning and directing work among Home Depot employees on a given week?
>
> A.  It would vary. I mean, it could be - - because I was on the floor all the time so it could be two hours a day.
>
> Q.  How did you come up with that number?
>
> A.  Just trying to figure out how much time I actually spend.
>
> Q.  I'm trying to understand what actual acts constitute planning and directing the work among associates.

\* \* \*

> Q. So can you explain what were the actual acts that you were
> doing in  planning and directing the work among associates?
>
> A. Basically, I would turn around and see the work list, see what
> had to be done. Direct the associates what to be done. Always on the floor
> with the associates.

(Payne T 49:2-22).

Another MASM, Stephen Riviera, spent 27 hours per week supervising, which is in the

middle range of the two previous MASMS.  He testified:

> Q.  Look at paragraph 25, please.  You say, "A large aspect
> of my job duties is planning and directing the work among
> employees in my department. Do you see that?
>
> A. Yes.
>
> Q.  You say you spend, "Approximately 27 hours apportioning,
> planning and directing the employees in my department as to
> work that must be completed.  How do you estimate it was
> 27 hours week?
>
> A.  At the time I tried to break things down and give it a lot
> more thought than I could do off the cuff now. I would have to
> do the time study all over again to answer that.

(Riviera T 102:19-103:11).

Example 2 - Non-Exempt Work

As with the differences in supervisory time, if one looks to hourly work, MASMs also

spend unequal time in labor intensive jobs.  Some of the MASMs expended long hours unloading

freight while others spent little time.  MASM Hector DeLeon spent about two hours a day

stocking shelves.  He stated:

Q.  How often would you stock shelves?

A.  That's an everyday thing.

Q.  How long would it take?

A.  Depending on the case or what I was working on or
how bad the aisle was, I should say, or that one section, it could
take a couple of hours a day.

(DeLeon T 34:12-33-14).

MASM Payne spent approximately the same time as DeLeon stocking shelves, but

according to him "it depends on the day."  He testified:

Q. How often would you be stocking shelves?

A.  Depends on the day.

Q.  On an average day?

A.  Couple hours.

Q.  Would you be at least spending some time stocking shelves every day?

A.  Depends on the duties that have to be done throughout
the day. It would vary.

Q.  What circumstances would vary?

A.  It depends on the day.  What really has to be done. I mean,
it's make sure stuff's coming in the building. Make sure it's
getting put away. Make sure associates are working. Make
sure the customers are being taken care of.

(Payne T 74:8-23).

Unlike Payne and DeLeon, MASM David Decher rarely stocks shelves.  He indicated:

      Q.  Stocking shelves is something you were doing daily?

      A.  I would say that not daily.

      Q.  When would you be stocking shelves, what circumstances?

      A.  Whenever I saw a need for it. If it was an out of stock
      on the shelf I would go up and get it and bring it down.
      Some occasions I've worked overnights where we've worked in
      Garden and worked overnight to be able to do that.

 (Decher T 98:1-11).

Similarly, Decher infrequently unloaded cargo.  He stated:

      Q.  How often would you pack out freight?

      A.  Once in a while.

      Q.  Once a week?

      A.  I would say it might be twice a week.

      Q.  How long would that take?

      A.  Maybe about half hour.

(*Id.* T 101:8-15).

<u>Example  3 - Job Functions</u>

Despite the varying testimony, one would surmise that the plaintiffs would discuss their primary job functions in similar terms, but surprisingly, this is not the case.  For example, McGeachy believed he spent most of his time supervising others:

      Q.  What do you find yourself doing most?

      A.  Interacting with associates.

Q.  How so or what kind of – how are you interacting with them?

A.  Giving them task, responsibilities, following up on those responsibilities.

(McGeachy T 17:8-17).

William Thurman believed his primary task was to reach sales goals.  He noted:

Q.  Okay, I'm limiting the question. Can you please describe the goals of an MASM?

A.  Overall goal is to make sales plan for the overall store.

Q,  Make what?

A.  Sales plan.

Q.  How does that work on a daily basis?

A.  Ensuring that we have the proper in stock levels for customers, ensuring we have the right associates in position to help customers, coming up with different ways to drive sales, merchandising.

(Thurman T 28:20-29:7).

By contrast, DeLeon testified that he spent most of his time performing the tasks of hourly employees.

Q.  Did all of the departments that you were assigned to have sufficient associates to service all the customers at all times?

A.  No, they didn't.

Q.  If you want to look at paragraph 14.

A.  Okay.

Q.  What types of tasks are on the tasks list?

A.   Again, it could be from, you know, down stocking shelves to cleaning displays, maintenancing of a whole aisle, end caps

-9-

helping, you know, empty out receiving from all the
freight. Again, they have a Seasonal Department. Bringing in
merchandise in from outside. But mainly – mainly it was just to maintain
the aisles as far as in stock and cleanliness.

Q.  If the tasks on the list were not completed did you have to step in and
complete them?

A.  Yes.

Q.  Did you observe that other ASMs had to step in and complete the
tasks on the tasks lists if they were not completed?

A.  Absolutely.

(DeLeon T 34:12-35:14).

Example 4 - Management Style

Hence, it appears that MASMs' main functions changed considerably, and according to

some testimony, a MASM's duties would also vary depending on the management style and

experience of the store managers.  As MASM Virginia Davidson stated, her duties included a

"big blend of everything."  (Davidson T 40:25).

MASM Decher indicated that his duties would change based on the store manager.

Decher said:

Q. [Your tasks] would also differ depending on the particular store that
you were working in, right?

A.  Yes.

Q.  Would they also vary if you asked different MASMs how much time
they spend on these tasks?

A.  I would expect it would vary. Because each manager is different.

Q.  Did the amount of time you devoted to tasks vary depending on who your
store manager was?

A.  Yes.

Q.  Did they vary depending on the season?

A.  Yes.

(Decher T 122:24-123:14).  Similarly, MASM Fred Cassi testified that each MASM operates

differently depending on his management style.

Q.  What does [management] mean to you?

A.  That's how you keep morale, and you keep them moving. And you don't tell them to do something that you wouldn't do.

Q.  Do you consider that leading by example?

A.  Yes.

Q.  Is that a manger technique?

A.  That's my technique.

Q.  And did you observe assistants or managers who had different technique than you did?

A.  Yes.

Q.  And who were less hands-on than you were?

A.  Yes.

Q.  When you chose to work along side of the hourly associates was that because Home Depot told you to do so or was it because it was your decision to do so?

A.  That's my management style.

(Cassi T 73:13-74:8).

Example 5 - Hiring and Firing Staff

      With regard to MASMs' ability to hire and fire staff, the testimony was mixed.  MASM

Decher recalled hiring employees.  He stated:

> I've made the offers - - I've actually done the hiring process
> through offering the applicant a position with the company saving
> that from drug test.  The conditional is that they pass the drug test.

(Decher T 69:10-14).  MASM Davidson had some role in the hiring process, but the testimony is

unspecific.  She said:

> Q.  At the Howell Home Depot when you're MASM, how
> many interviews do you perform during the hiring season?
>
> A.  I don't know.
>
> Q.  Would you conduct interviews by yourself?
>
> A.  Yes.
>
> Q.  Would you hire people on your own?
>
> A.  No.
>
> Q.  Did Department heads ever conduct interviews?
>
> A.  Not by themselves usually. Sometimes they'll sit in with me.
>
> Q.  How long did the interviews last?
>
> A.  Depends on whether it's a good interview or not.
>
> Q.  How long did a good interview last?
>
> A.  Half an hour, maybe.

(Davidson T 47:6-24).

MASM Payne testified on the hiring process, but his statements were contradictory.

Initially he stated:

> Q. Did you hire new employees for the SPI 2000 program?
>
> A. I interviewed.

(Payne T 47:8-11).  Later, Payne indicated differently. He testified:

> Q.  Was it your understanding that the responsibility for interviewing
> and hiring was the HR manager's responsibility?
>
> A.  They would hire – they would interview the associate, yes.
>
> Q.  Would you perform any recruiting activities?
>
> A.  No.

(*Id.* 54:23-55:5).

Interestingly, the lead plaintiff is different from the above individuals.  Novak maintained a nine-week log of his hours, and he appeared to catalog exactly what he had accomplished at work.   He stated:

> Q,  Do you keep a diary of any kind?
>
> A.  Currently, no.
>
> Q.  Have you ever kept a diary?
>
> A.  I kept an hours diary.
>
> Q.  When you worked at Home Depot?
>
> A.  Yes.
>
> Q.  And that was on a single page?
>
> A.  Yes.

Q. And you've – recognize that document at some point later
today, but for how long did you keep an hours diary?

A. I believe it was nine weeks' worth.

Q. Why did you start keeping an hours diary?

A. To track the amount of hours I was working.

Q. Why were you concerned with tracking the number of
hours that you were working?

A. Because I thought it was something I needed to keep
a record of since Home Depot didn't keep a record of it.

(Novak T 14:5-15:2). At the end of the day, Novak's testimony is different from all the others

and more importantly, it is not synonymous with the other deponents.

## II.

The federal class certification standards are well established. A party seeking class

certification bears the burden of proving that the proposed class action satisfies the requirements

of Fed. R. Civ. P. 23. *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183-84 (3d Cir.

2001). To meet this burden, Plaintiff must satisfy the four prerequisites of Rule 23(a) and show

that the action can be maintained under at least one of the three subsections of Rule 23(b). In the

Third Circuit, we look beyond the pleadings at the class certification stage of litigation. "[I]n

reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes

necessary to determine whether the alleged claims can be properly resolved as a class action."

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (3d Cir. 2001). Class

certification is proper only after a "rigorous analysis" that all prerequisites of Federal Rule 23 are

met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen.*

*Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)).

Looking at the Rule 23(b) inquiry, Novak moves for class certification under both 23(b)(2) and (b)(3) on several grounds.[2]  Pursuant to Rule 23(b)(3), an action may be maintained as a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Therefore, to satisfy Rule 23(b)(3), Novak must show that common questions predominate and that a class action is superior.[3]

A.      Rule 23(b)(3) Predominance

Predominance "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 623 (1997)).  "Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of 'questions of law and fact common to the members of the class.'"  *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir. 2002) (quoting Fed. R. Civ. P. 23(b)(3)).  The plaintiff's task is to show that the essential

---

[2]      To certify a class, Novak must also satisfy all four requirements of Fed. R. Civ. P. 23(a), which provides as follows:  "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[3]      This Court acknowledges the predominance and superiority findings made in *In re Home Depot Overtime Cases*, No. JCCP4229, 2006 WL 330169 (Cal. Super. Ct. App. Div. Feb. 2, 2006) ("*Home Depot Overtime I*"), *aff'd*, No. E040215, 2007 WL 4128093 (Cal. Ct. of Appeal 4th Dist. Nov. 21, 2007) ("*Home Depot Overtime II*") (collectively, "*Home Depot Overtime Cases*"), wherein the courts denied certification to a class of all MASMs in California alleging they were mis-classified as employees exempt from receiving overtime.

elements of the cause of action are capable of proof through evidence that is common to the class, rather than evidence unique to each individual class member. Thus, the Court looks for common proof. *Hydrogen Peroxide*, 552 F.3d at 311-12. Where common proof is not available, but instead, separate mini-trials are required, courts have found that the "staggering problems of logistics thus created" make the case unmanageable as a class action. *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977).

In determining whether MASMs are exempt, the "Executive Exemption" of the State Administrative Code (N.J.A.C. 12:56-7.1(a)) must be analyzed. This regulation requires an employer to establish the employee's eligibility under each of six standards in order to pay him or her a fixed salary.[4] *Marx v. Friendly Ice Cream Corp.*, 882 A.2d 374, 379-80 (N.J. Super. Ct.

---

[4]     Quoting the Executive Exemption, the regulation provides that an "executive" means any employee:

1.    Whose primary duty consists of the management of the enterprise in which he or she is employed or of a customarily recognized department or subdivision thereof; and
2.    Who customarily and regularly directs the work of two or more other employees therein; and
3.    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion of any other change of status of other employees will be given particular weight; and
4.    Who customarily and regularly exercises discretionary powers; and
5.    Who devotes less than 20 percent of his or her workweek to non-exempt work or less than 40 percent if employed by a retail or service establishment, provided that in either case he or she retains his or her role as manager and supervises two or more full time employees; and
6.    Who is compensated for his or her services on a salary basis exclusive of gratuities, board, lodging or other facilities, at a rate of not less than $300.00 per week effective November 5, 1990, $350.00 per week effective April 1, 1991, and $400.00 per week effective April 1, 1992.

App. Div. 2005).[5]  In short, the six standards are: (i) managerial responsibility (or primary duty) , (ii) authority to manage other employees, (iii) authority to select and retain staff, (iv) authority to exercise discretion, (v) percentage of work devoted to management, and (vi) compensation.  *Id.* at 379.  The employer shoulders the burden of lawfully withholding overtime from its employees. *Yellow Cab Co. of Camden v. State Dir. of Wage and Hour Bureau*, 312 A.2d 870, 873 (N.J. Super. Ct. App. Div. 1973).   Therefore, to satisfy Rule 23(b)(3) predominance, Plaintiff may only be required to show that common proof will demonstrate that Defendant cannot establish the six standards for New Jersey MASMs.

Plaintiff claims that the questions of law or fact predominate on the first, third, and fifth standards.  That is, that common proof demonstrates that each MASM's (i) managerial responsibility (or primary duty), (ii) authority to select and retain staff, and (iii) percentage of work devoted to management tasks do not qualify him or her for exemption.  Despite Plaintiff's contentions, individual issues overwhelm any of his showings.  First, the plaintiff contends that MASMs have little or no managerial responsibility.[6]  This seems at odds with the deposition

---

[5]       Although not at issue here, *Marx* is very broad, and this Court finds it difficult to apply as a whole in this case.

[6]       The U.S. Secretary of Labor, in 29 C.F.R. 541.102, identifies the following as activities done by management.  This regulation states in full:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or

testimony.  Four MASMs (Cassi, McGeachy, Thurman, and Riviera) acknowledged that they

oversaw between two to six departments within the store.  (Opinion at p. 4).  Particularly, one

MASM (McGeachy) indicated he supervised others for 40 hours a week. (*Id.* at p. 5).  However,

another MASM, DeLeon, indicated little or no managerial duties. (*Id.* p. 9).  These dissimilarities

must be evaluated on a case-by-case basis.

Second, Plaintiff suggests that the MASMs had no authority to select and retain staff, but

that is at odds with the testimony.  Some MASMs, like Decher, played a prominent role in the

hiring process, having made offers to applicants.  (*Id.* at p. 11).  By comparison, MASM

Davidson conducted interviews but did not hire people on his own.  (*Id.* at pp. 11-12).  However,

MASM Payne seemed to be on both sides of the hiring process, interviewing employees at times

but seeming also to defer all interviews to the HR manager.  (*Id.* at pp. 12-13).  The only way to

sort through these disparate contentions is through individualized hearings for each MASM.

Lastly, Plaintiff maintains that common proof will demonstrate that Home Depot cannot

show that each MASM has spent less than 40 percent of his or her workweek on non-exempt

work. However, the testimony seems to change with each individual.  Some MASMs stock

shelves and unload freight, while others had no such duty. (*Id.* at pp. 6-8).  Other MASMs, like

McGeachy, spent 40 hours per week supervising employees, which is exempt work. (*Id.* p. 5).

The testimony is at odds, and "the truth, no doubt, lies somewhere between." *Home Depot*

*Overtime I*, 2006 WL 330169, at *2.

---

merchandise to be bought, stocked and sold; controlling the flow and distribution
of materials or merchandise and supplies; providing for the safety and security of
the employees or the property; planning and controlling the budget; and
monitoring or implementing legal compliance measures.

Therefore, common issues do not predominate when examining a MASMs' responsibilities against the Executive Exemption Regulation. The purported class under Rule 23(b)(3) cannot be certified.

B.    <u>The Salary Basis Test</u>

Outside of the State regulation argument, Plaintiff asserts that the "salary basis test" warrants class certification. Plaintiff posits that to qualify as an exempt employee, the employee must, among other things, be paid on a salary basis. In order to be paid on a salary basis, an employee must be compensated by a predetermined amount that is not subject to reduction due to "variations in the quality or quantity of the work performed." N.J.A.C. 12:5607.1(a)(6). Plaintiff argues that Home Depot fails the salary basis test. Plaintiff contends that it was Home Depot's policy that if a MASM failed to work 55 hours per week then that MASM would be fired. Home Depot therefore failed the salary basis test for all New Jersey MASMs, providing common proof that each MASM was mis-classified as exempt. As support, Plaintiff cites to the depositions of two MASMs, Bennett and DeLeon; however, Plaintiff has misconstrued the evidence. First, at deposition, Bennett merely affirmed that he was required to be at his store for all his scheduled shifts. (T 17:11-14). DeLeon said that there were attendance guidelines for MASMs and that there would be consequences if he did not follow them. (T 12:23-13: 6). This evidence, from two MASMs, falls far short of establishing a payroll policy that was not a salary. The evidence reveals only that MASMs may be disciplined, including termination, for not working a certain number of hours.

That any employee, exempt or non-exempt, may be terminated for not showing up to work is common sense. The cited Department of Labor (DOL) letter dated March 10, 2006

(attached as Exhibit E to Defendant's Dec. 5, 2008 letter) states that "an employer may require an exempt employee to do things such as . . . work a specified schedule without affecting the employee's exempt status." The evidence presented demonstrates only that Home Depot requires some MASMs to work a specified schedule. It has nothing to do with the exempt salary test. Rather, what would cause an employee to lose his exempt status is a "clear and particularized policy--one which 'effectively communicates' that deductions will be made in specified circumstances." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). The evidence offered by Plaintiff, consisting of the testimony of two MASMs, does not constitute such a policy, and does not provide common proof regarding a mis-classification of New Jersey MASMs' exempt status.

C.     Rule 23(b)(3) Superiority

        Plaintiff cannot satisfy the superiority requirement of Rule 23(b)(3) either. In addition to predominance, under Rule 23(b)(3), the plaintiff must also show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement ensures that there is no other available method of handling multiple plaintiffs' claims which has greater practical advantages. *See* Fed.R.Civ.P. 23, Advisory Committee Note, 1966 Amendment to 23(b)(3). "A class action must represent the best available method for the fair and efficient adjudication of the controversy". *Johnston*, 265 F.3d at 194.

        The Plaintiff does not meet the superiority requirement. Home Depot has a right to litigate its defenses against each MASM.[7] The defenses include the substantial differences

---

        [7]     *Home Depot Overtime I* observed, "Home Depot has a fundamental due process right to raise affirmative defenses as to individual plaintiffs." The court continues: "This right to raise affirmative defenses as to individual [MASM] plaintiffs, in conjunction with the individual nature of damages in this case makes it difficult to see how class certification would substantially benefit the court." 2006 WL 330169, at *1.

among MASMs and their stores,[8] as set forth in the depositions.  (Opinion at pp. 4-14).  *Home Depot Overtime I* soundly rejected plaintiffs' argument, mainly due to the many differences among each store and each MASM's job responsibility.  The differences among stores in California included substantial variation in each store's gross sales ($2.5-$6 million per month), numbers of hourly associates (150 to 400), and number of MASMs (2 to 7).  The court also found significant differences in the job responsibilities of each MASM.  For example, the court found variation in each MASM's responsibilities as per numbers of associates supervised (ranging from 6 to 91) and departments managed (1 to 8), plus the nature of the work performed.  *Id.* at *5.  These same variations appear here.

Second,  individual recovery is potentially substantial, giving each MASM ample incentive to bring an action on his own.  The court in *Home Depot Overtime I* explained, "Using Home Depot's conservative 15 hours per week overtime concession, the lowest paid MASM would stand to recover at least $25,000/year, plus interest, penalties and attorney fees.  In short, an individual MASM does have sufficient incentive to pursue a meritorious claim."  *Id.*  These numbers are applicable to the case at hand too, where Home Depot describes the MASM's hours as a flexible 55 hour per week commitment, and MASMs have testified to working up to 85 hours a week, meaning they could potentially more than double their salaries.  The Plaintiff's contention that the potential value of individual MASM's claims is "likely nominal" is unsupported.  (Plaintiff's Reply Memorandum at p. 5).

The aforementioned substantial differences among New Jersey MASMs is another reason

---

[8]        *Accord Home Depot Overtime I*, 2006 WL 330169, at *3 ("In many ways, each store is unique").

why class treatment is not the superior method for resolving this dispute. By moving for class certification, Plaintiff asks this Court to decide in one trial whether every MASM in New Jersey is either exempt or non-exempt. Such an all-or-nothing determination would mean that either every MASM could recover for being mis-classified or none could recover. This is untenable. The superior avenue for a MASM is to bring an individual action. As the California court acknowledged, "[T]here is nothing to protect deserving MASMs in the face of an adverse finding as to the class." *Home Depot Overtime I*, 2006 WL 330169, at *5.

D.    Rule 23(b)(2) Certification

Plaintiff also moves for class certification under Rule 23(b)(2), which is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as whole." In moving for 23(b)(2) certification, Plaintiff seeks an order declaring that all current and former MASMs are non-exempt employees under New Jersey law, and compelling Home Depot to reclassify MASMs as non-exempt and to adjust their compensation accordingly. Based upon the proofs and proceedings to date, monetary damages is the main issue. Where monetary damages are sought, "a court may only certify a class [under Rule 23(b)(2)] if the damages are incidental to the primary claim for injunctive or declaratory relief." *Barabin v. Aramark Corp.*, Civ No. 02-8057, 2003 WL 355417, at *1 (3d Cir. Jan. 24, 2003). Such is not the case before this Court, wherein damages are the primary relief sought by Plaintiff. Further, the New Jersey Wage and Hour Law does not provide the injunctive remedy sought by Novak. See N.J.S.A. 34:11-56a23-25.

Plaintiff repeatedly cites to Title VII (workplace discrimination) and other civil rights cases where both equitable and monetary relief were sought, and (b)(2) certification was granted, to argue that such a holding is also appropriate here. *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001). However, these cases are fundamentally different, and by comparison, demonstrate why equitable relief is not the main issue in the case at hand. *See Baby Neal v. Casey*, 43 F.3d 48, 59 (quotation omitted) ("In fact, the injunctive class [(23(b)(2))] provision was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons.") The case before this Court is not a civil rights case; the constitutionality of Home Depot's behavior is not at issue. The record indicates that Plaintiff's main intention is to obtain the money damages.    In conclusion, having found that Plaintiff, Novak, does not satisfy either Fed. R. Civ. P. 23(b)(2) or (b)(3), this Court denies his motion for class certification.

THEREFORE, based upon the above,

IT IS on this 26th day of August, 2009,

ORDERED that Plaintiff, Novak's, motion for class certification (Docket Entry No. 41) is DENIED.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.